[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was commenced by plaintiff's complaint dated October 13, 1995. The defendant filed an amended answer and special defense dated October 17, 1997. The plaintiff filled a motion to strike the defendant's special defense on October 30, 1997. On October 31, 1997, the defendant filed an objection to said motion to strike. On November 5, 1997, the court granted the plaintiff's motion to strike the defendant's special defense.
The plaintiff Joseph W. Matteo, Jr. was fifteen years of age on April 22, 1995, the date of this incident. The plaintiff brought this suit by his mother, Susan Matteo, since he was a minor on the date it was commenced. The plaintiff testified that on April 22, 1995 he went fishing with two friends, namely, Christopher Sullivan and Nicholas Burkum. Prior to going fishing, the plaintiff testified he consumed two beers at his home. CT Page 13876 Sometime in the late afternoon the three boys drove to Lake Whitney to go fishing. Lake Whitney is a lake owned by the defendant, South Central Connecticut Regional Water Authority. The plaintiff testified that he and his two friends only had one fishing pole between them. As a result, they were going to take turns fishing. When they arrived at Lake Whitney, the plaintiff climbed a fence on the edge of the lake and commenced fishing. His two friends remained outside of the fence standing close by the plaintiff on a bridge abutment on Treadwell Street in the town of Hamden. At this time the plaintiff also had a wine cooler bottle on his person. He stated he took about two swallows of its contents. The plaintiff testified he was fishing about twenty minutes when Officer Robert Piascyk came along in his police vehicle. The officer ordered the plaintiff to climb back over the fence and he did. The plaintiff gave the officer his name and said he was seventeen years old. He stated he lied about his age because he was scared. The plaintiff stated he put the wine cooler on the bridge abutment as directed to by the officer. The officer then asked the plaintiff if he was ever there before. When asked this question, the plaintiff stated he became afraid so he ran away going west on Treadwell Street. Treadwell Street is a two-lane road which runs in an easterly-westerly direction between Dixwell Avenue and Whitney Avenue in the town of Hamden. As the plaintiff was running in a westerly direction on Treadwell Street in the south lane on the edge of the road pavement he heard a truck behind him. He then saw the truck come into view to his right when the left rear side of said vehicle collided with the plaintiff. The plaintiff stated he heard brakes and skidding and then the vehicle hit his hands, left shoulder and head. The vehicle was owned by the defendant. The plaintiff testified that as a result of being struck by the vehicle he was spun around counter clockwise and fell to ground on his right knee and hands. The plaintiff testified he got up immediately, ran around the rear of the defendant's police vehicle and continued running west on Treadwell Street for approximately thirty yards when he turned right into an industrial park. The aforementioned vehicle was being operated by Officer Robert Kneerman who was also employed by the defendant. The plaintiff testified he ran into and around said Industrial Park and then south on railroad tracks until he came out on Dixwell Avenue by the Super Stop and Shop store. He then saw a girl who he knew and she gave him a ride home. He stated his hand was cut and blood got all over his shirt. He stated when he got home his mother asked him what happened. He told her he was fishing and drinking wine and that he collided with a vehicle and then walked home. The plaintiff testified he CT Page 13877 was warned previously not to fish in Lake Whitney by his mother. He stated he told her about drinking beer and wine because he felt she would eventually find out.
Mrs. Matteo testified that before her son got home that night two of the defendant's officers came to her house and told her they caught her son fishing on the defendant's property and that he ran away. The officers asked her to call them when the plaintiff came home because they wanted to talk to him. Officer Piascyk testified that Officer Kneerman got the plaintiff's telephone number from his friends Christopher Sullivan and Nicholas Burkum. The officers then located where the plaintiff lived.
Ms. Matteo testified that when her son came home that night it was after 7 P.M. She said his shirt was covered with blood, his hair messed up and his face was red and blotchy. She testified that she asked the plaintiff what happened, and he stated he got caught fishing and he ran away and was chased and that he was hit by a truck. Mrs. Matteo testified her son's chest and the back of his neck were red and that his hand was cut. Mrs. Matteo testified she was angry and upset because the officers who were at her house earlier in the evening had not told her the whole story. She testified that she called her medical health care provider (Community Health Care Plan (CHCP) and described her son's condition to them. She was advised to bring her son to CHCP. She then called the officers who were at her house and told them she was taking her son to CHCP. Mrs. Matteo testified that she and her daughter took the plaintiff to CHCP about twenty to thirty minutes after he came home. She testified that her son was examined at CHCP, and the examining physician there ordered the plaintiff to be taken by ambulance to Yale-New Haven Hospital. At said hospital the plaintiff was x-rayed, given an IV, had his hand cleansed and bandaged and he also had a cat scan. All of the tests performed on the plaintiff were negative. The plaintiff was released from the hospital about 5 A.M. on April 23, 1995. Thereafter, the plaintiff went back to CHCP (on April 25, 1995 and April 27, 1995 (Exhibit A). The plaintiff also received physical therapy at Gaylord Hospital on May 1, 1995 and May 17, 1995. (Exhibit A). The plaintiff testified he stopped going to physical therapy on his own because he did not need it any long.
The plaintiff does not claim any permanency relative to the injuries he alleges he received in this incident. He is making a claim for the following medical bills: CT Page 13878
CHCP : $ 217.00
American Medical Response : 342.00
Yale New Haven Hospital : 1,939.28
Gaylord Hospital : 285.75
$2,784.03 (Exhibit A)
Officer Robert Piascyk who is employed by the defendant as a police officer testified. He stated the defendant is a political subdivision of the state and a nonprofit Utility Company that owns the lake in which the plaintiff was fishing on April 22, 1995. He stated he was working the noon to 8 P.M. shift that day and was wearing his uniform which was marked "Police Water Authority." He stated on that day he was travelling west on Treadwell Street, and he saw two males in the road and a third male inside the fence. He stated there was a sign which was clearly marked "No Trespassing" in the area (Exhibit 12). Officer Piascyk stated he pulled ahead of the plaintiff and his friends and got out of his vehicle. He identified himself and told the plaintiff to climb over the fence which he did. Officer Piascyk stated the plaintiff had no identification on him, and that he stated his name was Joseph Matteo and was seventeen years of age. The officer said he took a wine cooler bottle from the plaintiff's pocket and that he detected a strong odor of liquor on the plaintiff. He stated the plaintiff said he had not been warned not to fish there in the past. Officer Piascyk stated he turned to the plaintiff's companions, and the plaintiff walked to the other side of the street. Officer Piascyk testified he then told the plaintiff to come over to where he was. He stated the plaintiff then ran. Officer Piascyk yelled to the plaintiff to stop several times as he chased him but he did not stop. Prior to this Officer Piascyk had radioed his fellow officer Robert Kneerman that he had caught the plaintiff. Then as he was chasing the plaintiff he radioed that fact to officer Kneerman. Officer Piascyk testified he was going to arrest the plaintiff for trespassing on Lake Whitney, a reservoir, and for having alcoholic beverages. As Officer Piascyk was chasing the plaintiff, Officer Kneerman came from an easterly direction (heading west) and past him on Treadwell Street.
Both Officer Piascyk and Officer Kneerman testified that CT Page 13879 Officer Kneerman pulled his vehicle adjacent to the plaintiff on the other side (right) of the road. Officer Kneerman testified he stopped his vehicle abruptly and jammed it into "park". Both officers testified the plaintiff then crossed both traffic lanes on Treadwell Street and touched Officer Kneerman's vehicle and then went behind said vehicle and ran away in a westerly direction until he ran into an Industrial Park on said street. Officer Piascyk said he never saw the plaintiff fall or make contact with Officer Kneerman's vehicle when that vehicle was moving. He stated the plaintiff appeared confused and stumbled. He then checked his report and noted he did not state therein that the plaintiff stumbled. He stated he did not see the plaintiff stumble.
Officer Robert Kneerman testified that as he drove at approximately 20 miles per hour in a westerly direction on Treadwell Street he saw Officer Piascyk and three other individuals. When he first saw them he was about two hundred feet away from them. He testified he saw one person cross over the road and start to run with Officer Piascyk chasing him. He stated the other two individuals ran in the opposite direction. Officer Kneerman stated that he drove his vehicle parallel to the plaintiff and stopped quickly. He stated the plaintiff ran around his vehicle, and he did not see him fall. He further stated the plaintiff hit the left side of his vehicle. He testified that he "absolutely did not pull his vehicle in front of the plaintiff and stop."
During the evening of April 22, 1995, both Officers Piascyk and Kneerman, along with their supervisor, Chief Olsen, visited the CHCP and Yale New Haven Hospital while the plaintiff was at each of those medical facilities.
The plaintiff claims that as a result of being knocked down by defendant's car, he sustained severe, painful and permanent injuries. He alleges he sustained a severe shock to his nervous system; sprain, strain and soft tissue injury to the cervical spine; trauma and soft tissue injury to the left shoulder; trauma and soft tissue injury to the area of the right wrist; trauma to the head including a probable concussion; headaches, and related soft tissue injuries. He further alleges all of those injuries have caused and may continue to cause him severe pain and suffering, great mental anxiety and distress of mind. As a result of his injuries, plaintiff claims he was obliged to incur expenses for hospital and medical treatment, CT Page 13880 x-rays, lab work, orthopedic collar, CT scan, and physical therapy, and in the future may be obliged to incur further expenses for those purposes.
The plaintiff claims that his injuries and losses were caused by the negligence of Robert Kneerman in one or more of the following respects: in that he was operating his vehicle recklessly and at a rate of speed which was unreasonable, unsafe and improper, having regard to the width, traffic and use of the highway, the intersection of streets and weather conditions; in that he did not keep and operate his vehicle under reasonable control; in that he did not give a warning, although reasonable care required him to do so; in, although he saw or should have seen plaintiff in time to avoid the collision, he did not do so; in that, in violation of due care, he chased plaintiff who was a young boy, with his car creating grave danger for plaintiff, in that he negligently attempted to stop plaintiff running by cutting him off; in that he failed to exercise the care of a reasonably prudent person under the circumstances.
After hearing the evidence, the court finds that the plaintiff has failed to sustain his burden of proving his allegations by a fair preponderance of the evidence.
Judgment may therefor enter for the defendant.
William J. Sullivan Judge of the Superior Court
[EDITORS' NOTE: CT Page 13881 to 13883 are blank.] CT Page 13884